Erwin A. LA ROSE, Trustee in Bankruptcy of O. K. Sharp, Appellant,

v.

Anthony (Tony) CASHIO and C & S Surplus Materials Company, Appellees.

No. 20775.

United States Court of Appeals
Fifth Circuit.

April 8, 1964.

Franz Joseph Baddock, Baton Rouge, La., for appellant.

Samuel Cashio, Baton Rouge, La., for appellees.

Before TUTTLE, Chief Judge, and RIVES and WISDOM, Circuit Judges.

RIVES, Circuit Judge:

Relying on section 70e(1) of the Bankruptcy Act,[1] the plaintiff trustee in bankruptcy of O. K. Sharp sued the defendants, now appellees, for money transferred by the debtor without consideration within one year prior to bankruptcy. The only disputed question of fact was whether the transfer was one "made or incurred without fair consideration" within the meaning of section 67(d) (2) of the Act, subsections (a) and (b).[2] The district court submitted that issue to a jury which, after two hours' deliberation, reported that it was hopelessly deadlocked. The district court then granted the motion of the defendants for a direct-

---

1. "(e) (1) A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this title which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this title, shall be null and void as against the trustee of such debtor." 11 U.S.C.A. § 110(e) (1).

2. "(2) Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this title by or against him is fraudulent (a) as to creditors existing at the time of such

transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent; or (b) as to then existing creditors and as to other persons who become creditors during the continuance of a business or transaction, if made or incurred without fair consideration by a debtor who is engaged or is about to engage in such business or transaction, for which the property remaining in his hands is an unreasonably small capital, without regard to his actual intent * * *." 11 U.S.C.A. § 107 (d) (2) (a, b).

ed verdict. From the ensuing judgment this appeal is prosecuted.

The petition in bankruptcy was filed on July 10, 1957. On July 17, 1956, almost but not quite a year prior to bankruptcy, the debtor obtained from the American Bank & Trust Company in Baton Rouge, Louisiana, on the security of a mortgage covering real property owned by the debtor, a $10,000.00 loan in the form of a cashier's check payable to the order of the Treasurer of the United States. In due course, this $10,000.00 cashier's check was received by the Corps of Engineers as part of the sum of $16,666.99 due on a bid for the purchase of certain surplus buildings and materials located at the Orlando Air Force Base in Florida.

From photostatic copies of the bid and award, it appeared that the Government accepted a bid of a partnership composed of the debtor, O. K. Sharp, and the defendant Anthony (Tony) Cashio. However, both the debtor and the defendant contended that no partnership existed and that the debtor had no interest in the property purchased.

All of the $16,666.99 purchase price was paid by three cashier's checks, each obtained from the American Bank & Trust Company by the debtor. Prior to bankruptcy the defendant Cashio had repaid the debtor $6,666.99. As to the remaining $10,000.00, a $6,800.00 repayment was made to the American Bank & Trust Company prior to bankruptcy, out of the assets of the debtor when he sold certain of the properties covered under the bank's mortgage. As to the difference between the $6,800.00 repayment and the original amount of the $10,000.00 loan, that is, the sum of $3,200.00, the Bank filed its proof of claim in the bankruptcy court upon which disbursements to the Bank were made out of the assets of the bankrupt. There were creditors of the bankrupt whose debts were contracted both prior to the year period preceding bankruptcy and during that year, and others who held judgments rendered both during and prior to the year period preceding bankruptcy.

The foregoing facts had been found in greater detail by the Referee in Bankruptcy, as Master, and, as a result of these findings, he concluded that the sum of $10,000.00 had been improperly transferred from the estate of the bankrupt for the benefit of the defendant Anthony (Tony) Cashio and further concluded that the plaintiff, trustee in bankruptcy, was entitled to recover this money. The plaintiff trustee introduced the findings and conclusions of the Master in evidence.

Further facts were developed by the testimony of the bankrupt, O. K. Sharp, and the defendant Cashio. The debtor had operated a building material supply business. The defendant Cashio had been engaged in purchasing surplus buildings and materials from the Government. They originally planned a joint venture to organize a corporation to take title to the Orlando surplus properties. Upon advice of their attorney, they delayed preparation of the articles of incorporation to await acceptance of their bid. The bid was made in the name of the debtor, Sharp, and the defendant Cashio, and was accompanied by a cashier's check for $1,700.00. Cashio had given the debtor his check for one half of that amount or $850.00, dated June 28, 1956. By check dated July 15, 1956, Cashio paid to the debtor, Sharp, $6,-000.00. That check bore a notation in the lower left-hand corner, "part-payment on Orlando, Florida, job." Cashio and Sharp testified that some time between those two dates, June 28 and July 15, Cashio had delivered to Sharp $10,-000.00 in cash which he had obtained from his safety deposit box; that Sharp had misused a considerable part of that cash money by applying it on his personal needs; that before July 15, Sharp had decided that his finances would not permit him to continue with the joint venture. According to Sharp, in order to make good Cashio's $10,000.00 in cash, he borrowed $10,000.00 from the American Bank & Trust Company on July 17, 1956. Dated as late as July 16, 1956, appears an affidavit of Cashio, Sharp and

Carlos J. Cashio attached to the articles of incorporation of C & S Surplus Material Co., Inc., depositing that the $16,000.00 of capital stock had been subscribed and paid for in cash. Neither Sharp nor Cashio was able to produce any documentary evidence to corroborate in any way their testimony as to the $10,000.00 claimed to have been paid in cash by Cashio to Sharp. If Cashio did in truth and in fact deliver to Sharp $10,000.00 in cash, such delivery was necessarily on a date earlier than July 17, 1956, the date on which Sharp borrowed from the American Bank & Trust Company the $10,000.00, which he claims was for the purpose of replacing or making good Cashio's $10,000.00. Cashio had given him the cash "a week or two prior" to July 17, 1956. Cashio testified that he withdrew this $10,000.00 in cash from his safety deposit box, but could not remember the date.

The records of the Louisiana National Bank, North Baton Rouge Office, showed that Cashio rented safety deposit box Number 697 on November 21, 1951, which was entered on November 24, 1954, and that the next entry was on July 17 of a year in which the first three figures were 195 and the fourth figure was smudged or unclear. According to the bank's employee, "It is July 17, and it is 5 and then the last figure is not clear, whether it is a 6 or anything else, I cannot say definitely." The jury could have inferred that that record conflicted with Cashio's and Sharp's version of a delivery of $10,000.00 in cash some week or two prior to July 17, 1956, which $10,000.00 had been withdrawn from Cashio's safety deposit box.

The evidence was undisputed that within one year prior to bankruptcy the debtor, Sharp, transferred $10,000.00 to the defendant Cashio. Whether there was fair consideration for that transfer was a matter resting almost entirely in the knowledge of Sharp and Cashio. Though no witness directly contradicted their testimony, their credibility was nonetheless for the jury, in the light of the interest of Cashio and the possible interest of Sharp, and in view of the circumstances from which reasonable men might have concluded that their testimony was false. See 88 C.J.S. Trial §§ 214d, 215. The district court erred in directing a verdict for the defendants. The judgment is therefore reversed and the cause remanded.

Reversed and remanded.